UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGLAS MCCURDY, | **COMPLAINT** |
| Plaintiff, | Case No. 1:19-cv-2256 |
| -against- | |
| ITN NETWORKS, LLC and ITN-TOR, LLC, | |
| Defendants. | |

Plaintiff Douglas McCurdy ("Plaintiff" or "Mr. McCurdy"), by and through his attorneys, Venable LLP, upon his knowledge and belief, and as against ITN Networks, LLC ("ITN Networks"), and ITN-TOR LLC ("ITN-TOR") (collectively, "ITN" or "Defendants"), alleges as follows:

## NATURE OF ACTION

1. Mr. McCurdy and ITN-TOR entered into an employment agreement with an initial term of employment from June 24, 2016 through February 5, 2019.

2. By the express terms of the agreement, Mr. McCurdy's employment with ITN-TOR would automatically renew on February 5, 2019 for an additional one-year term, unless ITN-TOR provided Mr. McCurdy with 60 days' written notice of its intent not to renew the agreement.

3. Mr. McCurdy's was never provided with 60 days' written notice of ITN's intent not to renew his employment agreement, nor did Mr. McCurdy provide a written waiver of his right to 60 days' written notice of non-renewal.

4. As such, Mr. McCurdy's employment agreement automatically renewed on February 5, 2019 for an additional one year term, at a base salary rate of no less than $250,000 per

year. In addition to his base salary, Mr. McCurdy is also eligible to receive an annual performance bonus, and is entitled to participate in ITN's employee benefit plans. ITN's employee benefit plans consist primarily of medical coverage currently in the amount of $1,797.00 per month.

5. Defendants, however, breached their contractual obligations to Mr. McCurdy by refusing to allow Mr. McCurdy to continue his employment with ITN for the new one-year term, despite the renewal of his agreement on February 5, 2019. In doing so, Defendants denied Mr. McCurdy the $250,000 in base salary compensation as well as the employee benefits to which he is entitled under the express terms of his employment agreement for the new one-year term ending on February 5, 2020.

6. Mr. McCurdy is therefore entitled to recover the full $250,000 in base salary compensation along with the value of the employee benefits he would have received had Defendants honored their contractual obligations.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction). The amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties. Mr. McCurdy is a citizen of Connecticut and has resided in the state continuously for 18 years with no present intention of residing elsewhere. Upon information and belief, ITN-TOR is a limited liability company whose sole member is ITN Networks, and no member of ITN Networks is a citizen of Connecticut.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district. ITN maintains its corporate headquarters and offices within this district, and Mr. McCurdy was employed by ITN-TOR and ITN Networks within this district. Further, Mr. McCurdy's

Employment Agreement designated the state and federal courts within the State of New York as the required venue for any dispute relating to Mr. McCurdy's Employment Agreement.

## PARTIES

*Plaintiff*

9. Mr. McCurdy is an adult residing in Riverside, Connecticut.

*Defendants*

10. ITN is a traditional TV media company based in New York, New York.

11. ITN-TOR is a limited liability company established to house certain assets after ITN's acquisition of Torrential, Inc. ("Torrential"), a digital media business centered on distribution of video to smartphones, tablets, and connected TV devices. ITN acquired Torrential via an asset purchase of Torrential's digital media software technology in or around June 2016. ITN subsequently established ITN-TOR to house the assets of Torrential and to employ certain individuals previously employed by Torrential, including three former Torrential executives, one of whom was Mr. McCurdy.

12. ITN also set up an additional limited liability company – ITN Acquisitions Company, LLC – for purposes of paying salary compensation to those employed by ITN-TOR.

13. ITN Networks, LLC is a separate limited liability company established by ITN. Defendants effectively shuttered ITN-TOR and assigned Mr. McCurdy's employment to ITN Networks on or around July 1, 2018.

## FACTUAL ALLEGATIONS

14. From January 1, 2013 until approximately June 24, 2016, Mr. McCurdy was employed by Torrential as its President, Chief Financial Officer, and Board Director. In his role as President, Chief Financial Officer, and Board Director, Mr. McCurdy led strategic development

of Torrential's innovative business model, day-to-day operations management, business development for key media, measurement, data and verification partners, product development for the video technology platform and financial management.

15. After ITN acquired Torrential and formally housed its assets within ITN-TOR, Mr. McCurdy entered into an Employment Agreement with ITN-TOR on June 24, 2016 (the "Employment Agreement"), a copy of which is attached hereto as Exhibit A. Mr. McCurdy agreed to serve as ITN-TOR's President and Treasurer. Despite his change in title, Mr. McCurdy's duties remained the same.

16. Pursuant to the Employment Agreement, ITN-TOR hired Mr. McCurdy for an initial term of employment commencing on June 24, 2016, and ending on February 5, 2019. *See id.*

17. Defendants assigned Mr. McCurdy's employment to an affiliated entity – ITN Networks – on or around July 1, 2018, after ITN effectively shuttered ITN-TOR.

18. Under Section 3.1 of Mr. McCurdy's Employment Agreement, Mr. McCurdy's initial base salary was $205,000 per year. This rate increased to $250,000 per year on February 6, 2017. *Id.* Mr. McCurdy was also eligible to receive an annual performance bonus, and to participate in ITN's employee benefit plans. *Id.*

19. The Employment Agreement makes expressly clear that "the term of this Agreement shall *automatically renew on an annual basis for a one-year term* (each such one-year term a 'One-Year Renewal Term,' and, together with the Initial Term, the 'Term'), unless terminated earlier as provided in Article V or by either party upon written notice of non-renewal to the other party delivered not later than sixty (60) days prior to the end of the then-current One-Year Renewal Term." *Id* (emphasis added).

4

20. Thus, in order to stop Mr. McCurdy's Employment Agreement from automatically renewing for an additional one-year term on February 5, 2019, ITN was required to provide Mr. McCurdy with no less than 60 days' written notice of its intent not to renew the Employment Agreement. Sixty days prior to February 5, 2019 was December 7, 2018.

21. ITN failed to provide Mr. McCurdy with written notice of non-renewal of his Employment Agreement on or before December 7, 2018. In fact, ITN never provided Mr. McCurdy with *any* written notice of non-renewal of his Employment Agreement – a necessary condition precedent to prevent automatic renewal on February 5, 2019.

22. Nor has Mr. McCurdy agreed to any waiver of the Employment Agreement's 60-day notification requirement. Pursuant to Section 7.4 of the Employment Agreement, "[n]o waiver of any right will have effect *unless given in a writing signed by the party against whom the waiver is to be enforced*." *Id* (emphasis added). Mr. McCurdy has not provided Defendants with any signed writing indicating an intent to waive the 60-day notification requirement in his Employment Agreement.

23. Absent 60 days' written notice of non-renewal on or before December 7, 2018, and absent any signed waiver of the 60-day notice requirement, Mr. McCurdy's contract automatically renewed for a one-year term effective February 5, 2019.

24. On or around November 29, 2018, Defendants provided another ITN Networks executive – Torrential's former Chief Executive Officer – with written notice of non-renewal of his employment agreement, while a separate ITN Networks executive – Torrential's former Chief Technology Officer – received written notice that his agreement would be renewed with certain adjustments. These executives, along with Mr. McCurdy, were the only three former Torrential executives with termed employment agreements.

25. Tellingly, Mr. McCurdy did not receive *any* written notice of non-renewal or adjusted renewal to his Employment Agreement. If it were Defendants' intention to materially adjust, or not to renew, Mr. McCurdy's Employment Agreement, Defendants would have simply provided Mr. McCurdy with the same written notice of non-renewal or adjusted renewal that Defendants provided to Torrential's former CEO and CTO.

26. At no point did ITN even verbally suggest that Mr. McCurdy's Employment Agreement would be adjusted or not renewed. To the contrary, ITN told Mr. McCurdy on or around November 29, 2018 that they wished for him to continue working for ITN Networks in 2019, and hoped for Mr. McCurdy to *expand* his role with the company. Regardless, however, the point remains that, absent written notice of non-renewal, and absent a written waiver of his right to 60 days' notice, Mr. McCurdy's Employment Agreement automatically renewed on February 5, 2019.

27. In December 2018, Mr. McCurdy proactively set forth a number of possible ways to expand his role with ITN Networks to provide even greater value to the business. However, Defendants rejected Mr. McCurdy's suggestions. When Mr. McCurdy indicated that he would simply like to continue in his current role, Defendants refused to allow him to do so, despite the renewal of his Employment Agreement through February 5, 2020.

28. Defendants expressly acknowledged their failure to provide Mr. McCurdy with 60 days' written notice of non-renewal of his Employment Agreement. On or around December 17, 2018, ITN provided Mr. McCurdy with a draft letter retroactively seeking Mr. McCurdy's approval of a supposedly mutual non-renewal of his Employment Agreement. A copy of the Dec. 17, 2018 Draft Letter is attached hereto as Exhibit B.

29. In the Dec. 17, 2018 Draft Letter, Defendants state that, "[a]lthough we were to communicate this determination in writing at least 60 days before the Separation Date [defined in the letter as February 5, 2019], we have mutually agreed to waive the 60-day notification." *Id.* Mr. McCurdy refused to sign the letter, as he had never agreed to a mutual non-renewal of his Employment Agreement, nor had he provided a written waiver of Defendants' obligation to provide 60 days' written notice of non-renewal.

30. ITN terminated Mr. McCurdy's employment effective February 5, 2019 – the very date on which his contract was to automatically renew for an additional one-year term.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

31. Mr. McCurdy repeats and re-alleges the allegations in each of the preceding paragraphs as if set forth fully herein.

32. Mr. McCurdy entered into the Employment Agreement with ITN-TOR on June 24, 2016. Mr. McCurdy's employment was assigned from ITN-TOR to ITN Networks, as permitted by Section 7.1 of the Employment Agreement, on or around July 1, 2018. *See* Exhibit A.

33. Pursuant to the Employment Agreement, Mr. McCurdy was most recently entitled to a base salary rate of $250,000 per year, along with participation in ITN's employee benefit plans.

34. The Agreement makes explicitly clear that, absent 60 days' written notice of non-renewal from Defendants, Mr. McCurdy's Employment Agreement automatically renews on February 5, 2019.

35. Defendants failed to provide Mr. McCurdy with written notice of non-renewal of his Employment Agreement on or before December 7, 2018 – 60 days prior to the February 5,

2019 renewal date. Further, Mr. McCurdy did not provide Defendants with *any* written waiver of his right to 60 days' notice.

36. Mr. McCurdy fully performed his obligations under his Employment Agreement.

37. Defendants, however, breached their contractual duties owed to Mr. McCurdy under the Employment Agreement by refusing to honor the renewal of Mr. McCurdy's Employment Agreement for an additional one-year term, and refusing to provide Mr. McCurdy with the $250,000 base salary and employee benefits to which he is entitled for the new one-year term.

38. As a direct and proximate result of Defendants' breach of the Employment Agreement, Mr. McCurdy has suffered injuries, including, but not limited to, denial of the job to which he has a contractual guarantee, denial of a full year of base salary payment from Defendants at a rate of no less than $250,000 per year, and denial of Mr. McCurdy's participation in ITN's employee benefit plans.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff McCurdy respectfully requests that this Court enter judgment against Defendants by:

(a) Declaring that Defendants breached the Employment Agreement by (i) refusing to honor Mr. McCurdy's one-year renewal and (ii) refusing to provide one year of base salary payment and benefits after Defendants failed to provide Mr. McCurdy with 60 days' written notice of non-renewal, as required by the Employment Agreement;

(b) Awarding Mr. McCurdy damages of $250,000 – the minimum base salary amount to which he would have been entitled had Defendants honored their obligations pursuant to the Employment Agreement;

(c) Award Mr. McCurdy the value of the employee benefits to which he would have been entitled;

(d) All such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 12, 2019

VENABLE LLP

By: _____
Michael J. Volpe
David A. Katz
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel: (212) 307 - 5500
Fax: (212) 307 – 5598

*Attorneys for Plaintiff Douglas McCurdy*